NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

VALERIE FELIZ ALBANO, *Appellant*.

No. 1 CA-CR 14-0836
FILED 5-10-2016

---

Appeal from the Superior Court in Maricopa County
No.  CR2013-001539-001
The Honorable Robert E. Miles, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Terry Reid
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Jon W. Thompson and Judge Lawrence F. Winthrop joined.

_____

**H O W E**, Judge:

**¶1** This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). Counsel for Valerie Feliz Albano asks this Court to search the record for fundamental error. Albano was given an opportunity to file a supplemental brief in propria persona. She has not done so. For the following reasons, we affirm Albano's conviction and sentence.

**FACTS AND PROCEDURAL HISTORY**

**¶2** We view the facts in the light most favorable to sustaining the trial court's judgment and resolve all reasonable inferences against Albano. *State v. Fontes*, 195 Ariz. 229, 230 ¶ 2, 986 P.2d 897, 898 (App. 1998).

**¶3** One evening in October 2012, Phoenix Police went to a home in west Phoenix to conduct a warrant execution on Albano, who had a misdemeanor warrant. The officers also wanted to speak with her about a violent offender they sought and believed she had ties with. After getting consent from Albano's stepsister, who owned the house, officers entered and found Albano asleep on the couch with her 11-month old son. When she awoke, Albano became "very belligerent [and] uncooperative," yelling profanities and refusing the officers' commands.

**¶4** Hearing the yelling inside the house, Officer M.M., who had been watching the house's exterior during the warrant execution, decided to enter. Because Albano was refusing to follow the officers' commands, Officer M.M. grabbed her right arm and told her she was under arrest. When Officer M.M. pulled out his handcuffs, Albano slapped them out of his hands and immediately began trying to jerk her arms away from him. Another officer then removed Albano's son from the couch and took him outside while the remaining officers struggled with Albano.

**¶5** As she kept trying to jerk her arm out of Officer M.M.'s hold, Albano stood up on the couch, kicking him and trying to keep her hands out of his reach. Officer M.M. then pulled her down, and while Albano

continued to scream and kick the officer, he put her in an arm-bar position to control her, laying Albano on her stomach while controlling her elbow, wrist, and shoulder. As Officer M.M. held Albano in this position, another officer helped get Albano's other arm behind her back and placed her in handcuffs. As the officer did so, Albano scratched Officer M.M., digging her fingernails into his wrist.

¶6 Despite being handcuffed, Albano continued to fight and scream as officers took her out of the house. Once outside, Albano accused Officer M.M. of punching her several times and dislocating her shoulder. The officers called the paramedics to examine Albano, but the paramedics released her back to the officers after concluding that she had not sustained any injuries. The State charged Albano with one count of threatening or intimidating, a class one misdemeanor; one count of resisting arrest, a class six felony; one count of aggravated assault, a class four felony, and three counts of aggravated assault, each class five felonies. However, the State later dismissed the charge of threatening or intimidating.

¶7 During Albano's jury trial, an officer who was present at the scene testified that he saw Albano intentionally kick the officer twice as he tried to control her. Officer M.M. also testified that he worried that Albano's screaming intended to alert someone of the officers' presence to distract the officers "from the primary threat." After the State rested its case in chief, Albano moved for a judgment of acquittal pursuant to Arizona Rule of Criminal Procedure 20, arguing that insufficient evidence supported a conviction for the first five counts of the indictment. But the trial court denied the motion.

¶8 After the trial court conducted a hearing pursuant to Arizona Rule of Evidence 609—permitting the State to use some of Albano's prior convictions to attack her credibility as a witness—Albano testified on her own behalf. Albano testified that she began yelling profanities and threatening the officers when she awoke because she was not aware that they were officers. Upon realizing that the officer was with the Phoenix Police, Albano testified that she "tried to relax" and told the officer that she was not resisting. But she stated that the officer yelled commands at her to place her hands behind her back, though she could not do so because she was still lying on her back with her child on her chest. She also stated that Officer M.M. punched her, had his gun drawn at her, and "ram[med]" her into a wall. During rebuttal testimony, Officer M.M. denied all of these allegations.

¶9           After deliberating, the jury convicted Albano of one count of resisting arrest, acquitting her of the remaining four charges. Before her sentencing hearing, Albano voluntarily admitted to four prior convictions. The trial court subsequently conducted a sentencing hearing in compliance with Albano's constitutional rights and Arizona Rule of Criminal Procedure 26. The trial court considered Albano's prior convictions in aggravating her sentence, and as mitigating circumstances considered that she had young children requiring care and that she had made efforts to improve herself while in custody. After concluding that the aggravating and mitigating factors balanced each other out, the trial court sentenced Albano to the presumptive term of 3.75 years' imprisonment with 364 days' presentence incarceration credit. Albano timely appealed.

**DISCUSSION**

¶10          We review Albano's convictions and sentences for fundamental error. *See State v. Gendron*, 168 Ariz. 153, 155, 812 P.2d 626, 628 (1991).

¶11          Counsel for Albano has advised this Court that after a diligent search of the entire record, he has found no arguable question of law. We have read and considered counsel's brief and fully reviewed the record for reversible error. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. We find none. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, Albano was represented by counsel at all stages of the proceedings, and the sentence imposed was within the statutory limits. We decline to order briefing, and we affirm Albano's convictions and sentences.

¶12          Upon the filing of this decision, defense counsel shall inform Albano of the status of her appeal and of her future options. Defense counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85, 684 P.2d 154, 156–57 (1984). Albano shall have 30 days from the date of this decision to proceed, if she desires, with a pro per motion for reconsideration or a petition for review.

**CONCLUSION**

¶13        For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: ama